**Mary L. GARRISON, Respondent,**

v.

**William M. GARRISON, Appellant.**

**No. WD 68287.**

Missouri Court of Appeals,
Western District.

June 3, 2008.

Daniel J. Pingelton, Esq., Columbia, MO, for Respondent.

Ronald L. Jurgeson, Esq., Lee's Summit, MO, for appellant.

Before JOSEPH M. ELLIS, P.J., LISA W. HARDWICK and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, Judge.

William Garrison (Husband) appeals the judgment of the trial court dissolving his marriage to Mary Garrison (Wife). He claims that the trial court abused its discretion in awarding Wife maintenance and dividing his pension plans. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court with directions.

### Facts

Husband, age 46, and Wife, age 54, were married on June 23, 2001. No children were born of the marriage. Husband worked as a heavy equipment operator during the marriage. Wife has not been employed since 2000, when she left her job as a waitress to care for her ailing grandmother. After her grandmother's death in September 2004, the parties agreed that Wife would not return to work.

The parties separated on October 2, 2005. On that day while in Colorado, Husband attacked Wife throwing her to the ground, hitting her in the head, and stomp-

ing on and kicking her. He subsequently pleaded guilty to domestic assault.

Wife filed her petition for dissolution of marriage later that month. She requested maintenance of $1200 per month testifying that since the separation, she has been unable to find employment to adequately support herself. Evidence was also offered at trial regarding two pension plans to which Husband contributed.

Following trial, the trial court entered its judgment dissolving the parties' marriage. It awarded Wife maintenance of $1000 per month finding that she lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment. The trial court also found that there was no non-marital property to set aside to the parties and divided the marital property consisting of vehicles, checking accounts, and Husband's pension plans. It awarded Wife one-half interest in each pension plan to be payable through a Qualified Domestic Relations Order. This appeal by Husband followed.

## Standard of Review

On appeal, Husband claims that the trial court abused its discretion in awarding Wife maintenance and dividing his two pension plans. A decree of dissolution will be affirmed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Farris v. Farris*, 75 S.W.3d 345, 347 (Mo.App. W.D.2002). The evidence is viewed in the light most favorable to the decree, and all evidence to the con-

trary is disregarded. *Henning v. Henning*, 72 S.W.3d 241, 245 (Mo.App. W.D. 2002). "The party challenging the dissolution judgment has the burden of demonstrating error." *Id.*

A trial court has broad discretion in determining whether to award maintenance and in dividing marital property. *Farris*, 75 S.W.3d at 347; *Henning*, 72 S.W.3d at 245. Its decision regarding maintenance will not be reversed absent an abuse of discretion. *Id.* Likewise, an appellate court will only interfere with the division of marital property if the division is so heavily weighted in favor of one party as to constitute an abuse of discretion. *Id.*

## Maintenance

In his first point on appeal, Husband claims that the trial court abused its discretion in awarding Wife maintenance of $1000 per month for an unlimited duration. He contends that Wife failed to show that she was incapable of supporting herself through appropriate employment. He also argues that the unlimited duration of the award was improper.[1]

A trial court may award maintenance to a spouse if it finds that the spouse: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and (2) is unable to support herself through appropriate employment. § 452.335.1, RSMo 2000; *Donovan v. Donovan*, 191 S.W.3d 702, 705 (Mo.App. W.D. 2006). "The spouse seeking maintenance has the burden of establishing these threshold requirements." *Donovan*, 191 S.W.3d at 705. Once the trial court deter-

---

1. Husband also claims that the amount of the maintenance award was excessive. He does not, however, raise this claim in the point relied on or develop an argument on how the court's determination of the amount of the award was an abuse of discretion. As such, the claim is not properly before this court. *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 448 n. 4 (Mo.App. W.D.2007).

mines that maintenance is warranted, it must consider the following factors in determining the amount and duration of maintenance:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2, RSMo 2000; *Sweet v. Sweet*, 154 S.W.3d 499, 504–05 (Mo.App. W.D. 2005). "The court is to apply the factors so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay." *Sweet*, 154 S.W.3d at 505.

 Husband first argues that Wife failed to show that she was incapable of supporting herself through appropriate employment. He concedes that Wife showed that her expenses were in excess of her income and that she was unemployed at the time of the dissolution but argues that she was capable, if she so desired, of earning enough income to meet her needs. The record, however, supports the trial court's determination that Wife needed maintenance. Wife is 54 years old. She has a 10th grade education and a GED. She does not have any specialized training. Wife has not worked since before the marriage in 2000 by agreement of the parties. She previously worked in the food service industry as a waitress. The highest salary she ever earned as a waitress was $16,000 a year. Husband, on the other hand, earns $6632 per month as a heavy equipment operator.

Since the parties' separation, Wife has attempted to find a waitressing job. She testified that she has applied at a number of restaurants including RC's, Jess & Jim's, O'Charlie's, Long Horn, Ruby Tuesday, Rippers, Franke & Marty's, Time Out, and Jack Stack's and Applebees twice but has not received an offer of employment. Even if Wife does find regular employment, her age and health problems will limit the amount of time she can actually work. She testified that she has problems with her lower back and metatarsal joints in her feet and that she will only be able to work twenty hours per week.

The record also reveals that Wife lacks sufficient property to provide for her reasonable needs. Wife does not have any separate, non-marital property. The marital property awarded to her consisted of her vehicle worth $5140, a savings account with a balance of $37, a checking account with a balance of $0, and a portion of each of Husband's pension funds, from which Wife would not be eligible to draw benefits until Husband, who is 46 years old, attains

a qualifying age—60 years old for early retirement and 65 years old for normal retirement. Additionally, Wife was apportioned $8970 in bank and credit card debt. Wife met her burden of establishing the threshold requirements for maintenance.

Next, Husband contends that the trial court abused its discretion in awarding maintenance to Wife for an unlimited duration. He claims that the length of the marriage, almost six years, militates against the maintenance award of unlimited duration. While the length of the marriage is certainly a factor to be considered under section 452.335.2 in determining the amount and duration of maintenance, it is not the only factor for the court's consideration. Additionally, Husband fails to cite any cases to support his proposition that a maintenance award of unlimited duration is unwarranted in a case of a short marriage. Indeed, "[t]he judicial preference is for a maintenance award of unlimited duration." *Lincoln v. Lincoln*, 16 S.W.3d 346, 347 (Mo.App. W.D.2000). A maintenance award of limited duration is justified only where there is substantial evidence of an impending change in the financial condition of the parties. *Id.* If no evidence is presented or no reasonable expectation can be made that the circumstances of the parties will be markedly different in the future, maintenance should not be prospectively terminated. *Id.* No evidence was presented in this case of an impending change in the financial condition of the parties. The trial court did not, therefore, abuse its discretion in awarding maintenance for an unlimited duration. Point one is denied.

## Division of Pension Funds

In his second point on appeal, Husband contends that the trial court abused its discretion in dividing his pension funds. He asserts that the trial court not only divided the portion of the funds accrued during the marriage but also the portion that was earned and contributed prior to the marriage.

" 'Pension benefits are considered marital property and are subject to division in a dissolution proceeding.' " *Hall v. Hall*, 118 S.W.3d 252, 259 (Mo.App. W.D.2003)(quoting *Williams v. Williams*, 17 S.W.3d 559, 562 (Mo.App. E.D.1999)). Pension benefits accumulated prior to marriage, however, are not marital property and are not divisible. *Id.* (quoting *Pruitt v. Pruitt*, 94 S.W.3d 429, 433 (Mo.App. E.D.2003)). Thus, the trial court in a dissolution case should ordinarily separate the marital and non-marital portion of a pension benefit according to the source of funds rule and set aside the non-marital portion to the spouse who earned it. *Id.* "The trial court's determination of whether property is marital is presumed correct, and the burden is upon the appellant to demonstrate error." *Id.* at 261.

At trial, evidence was presented that Husband participated in two pension funds—the Operating Engineers Local 101 Pension Fund and the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. The trial court found that neither party proved a claim for non-marital property. It then designated both pension funds as marital property and divided them equally between the parties.

Husband contends that the evidence demonstrated that portions of the pension benefits were non-marital property because they were accumulated prior to the marriage. Husband is correct regarding the Local 101 Pension Fund. Thomas Wilson, an employee of the Local 101 Pension Fund, testified that Husband is a participant in that pension fund. During Mr. Wilson's testimony, Exhibit No. 9 was

introduced into evidence. Exhibit No. 9 consisted of documents from the Local 101 Pension Fund showing Husband's credited contributions and hours and a letter prepared by Mr. Wilson summarizing the documents. The documents and letter showed that Husband has contributed to the Local 101 Pension Funds every year since 1980. As of the time of trial, he had credited contributions of $48,546.67 and credited hours of 22,101.31. Exhibit No. 9 also showed that, as of the date of the parties' marriage, June 23, 2001, Husband had credited contributions of $34,552.64 and credited hours of 18,620.31. Mr. Wilson's testimony and Exhibit No. 9 demonstrated that Husband accumulated 71% of his Local 101 pension benefits prior to the parties' marriage. That portion accumulated prior to the marriage is not marital property, and the trial court should have set it aside to Husband as his separate property. Only the portion accumulated after the date of the marriage until the time of dissolution was marital property and divisible. *Pruitt,* 94 S.W.3d at 433. Accordingly, the judgment regarding the Local 101 Pension Fund is reversed, and the case is remanded for the trial court to set aside to Husband as his separate property the non-marital portion of his pension benefits and to divide the marital portion.

Husband failed, however, to demonstrate that a portion of his Central Pension Fund benefits was non-marital property. Husband admitted at trial that he did not disclose in his interrogatory answers prior to trial his interest in the Central Pension Fund and that he did not provide to Wife or offer into evidence at trial fund statements for the end of 2005 and mid-year 2006. Husband did introduce Exhibit No. 53 at trial. Exhibit No. 53 contained a fund statement for mid-year 2005 and a fund statement dated December 30, 2001. While it appeared from the 2001 statement that Husband contributed to the Central Pension Fund prior to the marriage, the exhibit did not reveal the value of his contributions as of the date of the marriage. And no other evidence was offered regarding when Husband began participating in the Central Pension Fund or the extent of his participation. Furthermore, Husband did not offer any evidence regarding the value of the fund at the time of trial. Husband has failed to meet his burden of demonstrating that the trial court erred in determining whether the Central Pension Fund was marital. *See Martinez v. Martinez,* 136 S.W.3d 886, 889–90 (Mo.App. W.D. 2004)(where no evidence was presented regarding the amount Husband contributed to his pension plan prior to marriage, appellate court cannot conclude that the trial court erred in not setting aside a portion of IRA as separate property); *Hall,* 118 S.W.3d at 261 (where no evidence was presented at trial as to how the pension was computed, the exact date when the pension benefits accrued, nor the date when the plan began, appellate court could not ascertain what, if any, contributions were made to the pension plan prior to the marriage or find error with the trial court's designation of the entire pension as marital property).

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

ELLIS, P.J. and HARDWICK, J. concur.