**Richard J. ROCHE, Appellant,**

v.

**Donna J. ROCHE, Respondent.**

No. ED 91294.

Missouri Court of Appeals,
Eastern District,
Division One.

May 12, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 2009.

Application for Transfer Denied
Sept. 1, 2009.

Alan E. Freed, Paule, Camazine & Blumenthal, P.C., St. Louis, MO, for Appellant.

Nathan S. Cohen, Law Office of Nathan S. Cohen, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Richard Roche (Husband) appeals from the trial court's Judgment of Dissolution of Marriage (Judgment) dissolving his marriage with Donna Roche (Wife), dividing the marital and non-marital property, awarding Wife maintenance, and awarding Wife attorney fees. We affirm in part and reverse and remand in part with instructions.

### Background

Husband and Wife were married on August 16, 2003, in St. Louis County. No children were born of the marriage. They separated on August 8, 2007.

Nearly four years after the marriage, on July 18, 2007, Husband filed his Petition for Dissolution of Marriage seeking a dissolution of the marriage and an equitable division of the marital property and debts. Wife then filed an Answer to Petitioner's Petition for Dissolution of Marriage and a Counter Petition for Legal Separation.

Prior to trial, Wife filed a Motion for Appointment of a Guardian ad Litem on November 29, 2007.[1] Wife sought appoint-

---

1. Wife also filed a Petition for Guardianship and Conservatorship with the probate division of the Circuit Court of St. Louis County, however the records of that proceeding are not included in the Legal File on appeal. Respondent filed with her brief an Appendix purporting to contain various pleadings and documents from the aforementioned Petition for Guardianship and Conservatorship. While there is some question and disagreement as to whether the trial court took judicial notice of the probate proceedings, or any portion thereof, we do not address that issue because both parties agree in their briefs that Wife voluntarily dismissed the petition she filed in the probate division after evidence was adduced of Husband's competency. While the record reflects the trial court's general knowledge of the probate proceeding, whether the trial court took judicial notice of the entire probate file, or what portions of the file, if any, is unclear from the record before us. Accordingly, we grant Appellant's Motion to Strike Appendix to Respondent's Brief.

ment of a guardian ad litem for Husband because he allegedly was not competent or able to manage his own affairs, nor capable of making decisions in his best interest. Wife also alleged in her motion that Husband was incompetent to make decisions concerning the distribution of marital assets and/or division of marital property. Attached to her motion were four exhibits containing medical records and letters from physicians attesting to Husband's lack of competency. The trial court denied Wife's motion on December 3, 2007.

The trial court then heard the dissolution proceeding on December 17, 2007. At trial, Husband testified and also presented testimony from his daughter, Colleen Roche, and William Connors, Husband's friend and financial advisor. Wife testified on her own behalf. The parties both presented a variety of exhibits, most of which were not included in the Legal File for our review. However, the Legal File does contain a portion of the evidence presented at trial regarding a trust created by Husband and the marital residence.

Husband presented evidence that in October 1997, he purchased property located at 2540 Wallford Walk (the Residence). Shortly thereafter, in November 1997, Husband transferred the Residence via quit claim deed to the Revocable Living Trust of Richard J. Roche (Trust). Husband also presented evidence of a quit claim deed, filed in January 2005, listing both "Richard J. Roche and Donna J. Lee, now known as Donna J. Roche" as "Grantors" and "Richard J. Roche and Donna J. Roche as tenants by the entirety," as the "Grantees." Wife later presented evidence of a quit claim deed regarding the Residence that had been filed in June of 2002, prior to her marriage to Husband. The quit claim deed identified "Richard J. Roche" as "Grantor" and "Richard J. Roche and Donna J. Lee as joint tenants

with rights of survivorship" as the "Grantees."

During trial, the trial court also admitted into evidence as an exhibit several Trust documents. The first part of the exhibit was a document creating the Trust in December 1998 and naming Husband as both Grantor and Trustee. The Trust transferred from the Grantor to the Trustee (both Husband), a variety of property including the Residence. The Trust also listed Wife as a beneficiary of $30,000, provided the two were still living together at the time of Husband's death. An amendment to the Trust was filed in July 2002, naming Wife as Successor Trustee. A second amendment was filed in March 2003, granting fifty percent of the proceeds of Husband's estate to Wife and again naming Wife as Successor Trustee. A third amendment in January 2005 granted the remainder of Husband's estate to Wife, and retained her as Successor Trustee. A fourth amendment, filed in October 2007, removed Wife as a Trust beneficiary and trustee.

The Trust document granted the parties to the Trust a number of rights, obligations, and responsibilities. In particular, the Trust granted the Trustee the right to "sell . . ., convert, reconvert, convey, assign, transfer, exchange or otherwise dispose of any property held by the Trustee in Trust hereunder." The Trust also retained a right to revoke for the Grantor, stating in part:

The Grantor may at any time or from time to time by written request, delivered to the Trustee, withdraw all or such part of the principal of the Trust Estate as the Grantor may designate and upon receipt of such request, the Trustee shall transfer and deliver to the Grantor or to the Grantor's order, free of Trust, such portion or portions of the

principal of the Trust Estate as Grantor may request.

At trial Wife renewed her motion to appoint a guardian ad litem for Husband, stating during Husband's testimony:

> Wife's Counsel: Your Honor, I'm going to, at this point, renew my objection—renew my motion to appoint a guardian ad litem. [Husband] clearly doesn't remember key—specif—things that are not—that are key to the case, such as giving instructions to close out marital accounts and sequester marital assets that [Wife] has not had the benefit of and—
>
> The Court: Well, counsel, do you have any response?
>
> Husband's Counsel: Judge, I think [Husband's] testimony was that he approved of it. He does—he does [have] memory deficits, there's no question about that, but I—I don't see the need for a guardian ad litem to look after his interest. He seems to know what his own interests are. He—he does have specific memory deficits.
>
> The Court: Well, counsel, frankly, this won't be the first person I've seen who doesn't have an idea how and where bills are paid.
>
> Wife's Counsel: I—
>
> The Court: I don't know that that in and of itself is a sufficient reason. I've watched him testify, he certainly understands what you're asking him. Apparently, he's put his trust in one person to pay his bills and has relied on that person to do it.

The trial court then denied Wife's renewed motion.

After considering the record, the testimony, the evidence, and the proposed distribution of marital property filed by each party, the trial court entered its Judgment on February 4, 2008. The trial court found that in March 2002, while the parties were dating, Husband suffered a debilitating stroke. The stroke caused Wife to leave her employment as a cosmetologist to help Husband with his recovery, and also necessitated Husband's retirement from the St. Louis County Sheriff's Department. The trial court found that Husband resided in a Senior Retirement Community, while Wife continued to reside in the Residence. Further, Husband's gross income in 2006 was approximately $60,000, while Wife had no income that year. In its Judgment, the trial court made the following findings regarding the parties' property.

### The Residence

The trial court found that Husband purchased the Residence in 1997, though he subsequently deeded the Residence to the Trust. The trial court also found that in 1998 Husband amended the Trust to make Wife the beneficiary of the Residence at his death.[2] Husband recorded deeds on the Residence in 2002 and 2005. The 2002 deed added Wife's name as a joint tenant prior to her marriage to Husband. The 2005 deed identified both parties as owners of the Residence after the marriage as tenants by the entirety. The trial court found the Residence was a gift to the marriage and thus was deemed marital property.[3] The trial court awarded the Residence to Wife, and also adjudged Wife responsible for the outstanding debt on the Residence as of February 15, 2008.

---

**2.** While the trial court made this finding in its Judgment, the record on appeal does not contain the alleged 1998 amendment to the Trust.

**3.** It is important to note that Husband listed the Residence as "marital" on his Statement of Property filed with the trial court.

### Maintenance

The trial court ordered Husband to pay Wife $1000 per month for periodic maintenance beginning February 15, 2008, subject to modification. The trial court found that while Wife was trained as a cosmetologist, she was unemployed as of the trial and testified that she suffered from arthritis and depression. No medical evidence was presented at trial that either condition prevented Wife from obtaining employment. The trial court further found that although Wife was capable of working and becoming self sufficient, she was not working at that time, and maintenance was required to meet some of her reasonable needs.

### Trust and Investment Accounts

In addition to Husband's Trust, the trial court also found Husband had several premarital investment accounts in his name. The trial court concluded that it was unclear which accounts had increased during the marriage as a result of dividend reinvestment or the result of market forces, but found the value of the increase in the accounts to be $95,428. The trial court awarded both the Trust and the investment accounts, including the increase in value since the date of the marriage, to Husband.

### 2005 Buick LaCrosse

The trial court awarded the parties' 2005 Buick LaCrosse to Wife and ordered her to pay Husband $7000 for his share of the vehicle.

After the trial court entered its Judgment, Wife filed a Motion for a New Trial or in the Alternative to Amend Judgment and Reopen the Record for Additional Evidence. Husband filed a Motion to Amend Judgment along with a Motion to Vacate Judgment, Motion for New Trial, and Motion to Appoint Guardian ad Litem or Next Friend for the Petitioner, and Motion to Introduce Additional Evidence at Trial. A hearing was held on the parties' motions on April 17, 2008, after which the trial court denied all of the motions filed by both Husband and Wife

Husband filed his timely Notice of Appeal on April 25, 2008. This appeal follows.

### Points on Appeal

Husband presents five points on appeal. In his first point, Husband alleges the trial court erred in failing to conduct an evidentiary hearing on Wife's motion to appoint Husband a guardian ad litem. Husband asserts that Rule 52.02(k) requires the trial court to hold an evidentiary hearing on the issue of a party's competency upon a motion and the trial court's failure to conduct such a hearing prejudiced Husband and his ability to introduce competent evidence.

Second, Husband asserts the trial court erred in characterizing the Residence as marital property and awarding the Residence to Wife. Husband alleges two bases for the trial court's error. First, Husband argues the two quit claim deeds purporting to transfer the Residence were ineffective and did not evidence Husband's donative intent to Wife because the Residence was owned by the Trust, and Husband did not execute the deeds in his capacity as trustee but, instead in his individual capacity. Second, Husband claims the trial court lacked jurisdiction to divest the Trust of its res because the Trust was never joined as a party to the litigation. Husband argues that unless the Trust was joined as a party to the litigation, the trial court lacked jurisdiction to award the Residence to either Husband or Wife because the Residence was not titled in either of their names, but in the name of the Trust,

In his third point, Husband claims the trial court erred in awarding assets owned

by the Trust to either party since the Trust was not joined as a party in the divorce proceedings. Because the Trust assets were not marital property subject to division, Husband argues the trial court exceeded its jurisdiction when it divided property owned by the Trust and made awards of the trust property to Husband and Wife.

In his fourth point, Husband asserts the trial court erred and abused its discretion in awarding Wife modifiable monthly maintenance. Husband first argues that the award of maintenance was error because there was no finding that Wife lacked sufficient property to provide for her reasonable needs. Husband further claims that the amount of the maintenance award was in error because the length of the marriage was short, Wife was awarded substantial property, Wife is able to work, Husband is unable to work and suffering from a permanent disability, and Husband's net income after taxes is insufficient to justify an order of maintenance.

Fifth, Husband alleges the trial court plainly erred in awarding Wife the Residence without a legal description of the Residence in the Judgment because the trial court is required to set forth the full legal description of any real estate that is affected by the Judgment, and failed to amend the Judgment to include the legal description of the Residence.

## Discussion

### Point I—Evidentiary Hearing on Competency Issue

■ In his first point, Husband argues the trial court erred in failing to conduct an evidentiary hearing on Wife's motion to appoint Husband a guardian ad litem. Husband vehemently argued against the appointment of a guardian ad litem at trial and asserted his competency to proceed throughout the dissolution proceeding.

However, now facing a judgment which he finds objectionable, Husband appeals the Judgment claiming prejudice in the valuation, classification, and division of real and personal property as a result of the trial court's failure to conduct the very evidentiary hearing which he opposed.

■ Rule 52.02(k) governs the appointment of a guardian ad litem for those persons with mental competency issues. Under the claims raised by Husband, this Court would normally analyze the trial court's actions to determine if the trial court acted consistent with the requirements of the rule. The record clearly reveals that the trial court considered the position of both parties regarding Wife's motions, and was attentive to Husband's demeanor and testimony. Whether Rule 52.2(k) required anything more of the trial court given the specific facts of this case is an analysis we need not reach because Husband's position at trial precludes him from raising this point on appeal. It is a well settled that "[p]arties are bound on appeal by the positions they took in the trial court." *State Farm Mut. Auto. Ins. Co. v. Esswein*, 43 S.W.3d 833, 839 (Mo. App. E.D.2000); *see also Kleim v. Sansone*, 248 S.W.3d 599, 602 (Mo. banc 2008) (finding "[a] party on appeal generally 'must stand or fall' by the theory on which he tried and submitted his case in the court below"); *Davis Indus. Sales, Inc. v. Workman Constr. Co., Inc.*, 856 S.W.2d 355, 362 (Mo.App.S.D.1993) (finding "[a] different theory will not be considered for the first time on appeal"); *S. v. S.*, 595 S.W.2d 357, 363 (Mo.App. W.D.1980) (found that the wife who argued at trial that her husband was the father of the child could not ask the court on appeal to review the case on a different theory than the one she proceeded on in the trial court when she attempted on appeal to argue non-paternity).

Wife filed a Motion for Appointment of a Guardian ad Litem, and renewed that motion at trial alleging Husband was not capable of making decisions in his best interest, and was therefore incompetent to make decisions regarding the distribution of marital assets and/or the division of marital property. Husband, represented by legal counsel, opposed both motions asserting his competency to proceed without the assistance of an appointed guardian ad litem. The trial court made firsthand observations of Husband during the dissolution proceedings, and ruled in Husband's favor on Wife's motions. We will not now allow Husband to use this Court as a pawn and change his theory on appeal because he is dissatisfied with the trial court's Judgment. *Anderson v. Anderson*, 869 S.W.2d 289, 292 (Mo.App. S.D.1994) ("A party cannot try his case on one theory in the trial court and, if unsuccessful, rely upon a different theory on appeal."). Husband's first point is denied.

### Points II and III—Characterization of Trust Property

In his second and third points on appeal, Husband claims the trial court erred in awarding any party property owned by the Trust. Because the Trust property was not marital property subject to division by the trial court, Husband argues the trial court exceeded it jurisdiction when it divided the Trust property and awarded portions to Husband and Wife. Husband objects to the characterization of the Residence as marital property and to the award of the Residence to Wife in his second point, and objects to the award of other Trust assets in his third point.

### Standard of Review

On appeal, a dissolution decree will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Garrison v. Garrison*, 255 S.W.3d 37, 40 (Mo.App. W.D.2008), *citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review the evidence in the light most favorable to the decree and all evidence to the contrary is disregarded. *Id.* The party challenging the dissolution judgment has the burden of demonstrating trial court error. *Id.*

Further, the trial court has broad discretion in classifying and dividing marital property. *Moore v. Moore*, 189 S.W.3d 627, 632 (Mo.App. W.D.2006). We assume the trial court's division of property is correct and the party challenging the division has the burden to overcome that presumption. *Id.*

### Analysis

#### A. The Residence

The record is clear that Husband acquired the Residence prior to his marriage to Wife. The record also supports Husband's claim that he transferred the Residence into the Trust prior to his marriage to Wife. However, relying upon the quit claim deeds entered into evidence, the trial court classified the Residence as "a gift to the marriage and thus marital property," and then awarded the Residence to Wife as part of the dissolution. Husband alleges the trial court erred when it made this classification and award of property because the two quit claim deeds purporting to transfer ownership of the property were ineffective as the Residence was owned by the Trust, not Husband in any individual capacity, and the trial court therefore lacked jurisdiction to divest the Trust because the Trust was never joined as a party. We disagree.

As in his first point on appeal, it appears Husband now offers a different theory than he argued before the trial court. Husband filed a Statement of Property

with the trial court setting forth the parties' properties, and offering his classification of each property as "marital" or "separate." Husband was represented by legal counsel in the dissolution proceedings. Husband listed the Residence in his Statement of Property and classified the Residence as "marital property." Although the Legal File does not contain Husband's proposed distribution of property, we note that the record before us does not include any evidence indicating Husband's opposition to the classification of the Residence as marital property. At trial, Husband testified that he transferred the Residence to Wife and himself. Husband did not argue at trial that the Residence remained under the ownership of the Trust, or that the quit claim deeds executed by Husband did anything other than transfer ownership of the Residence to he and Wife jointly. Thus, as with Husband's first point, we will not permit Husband to now assert a different theory on appeal by claiming the Residence was not marital property.

However, were we to substantively review Husband's second point on appeal, we would nevertheless affirm the trial court because we find no error.

Because Husband purchased the Residence prior to the marriage, the Residence would normally qualify as non-marital property. However, "[t]ransmutation arises when one spouse converts non-marital property into marital property by gift or by express or implied agreement." *Groenings v. Groenings,* 277 S.W.3d 270, 275 (Mo.App. E.D.2008). When a spouse places non-marital property into the names of both spouses, a rebuttable presumption arises that the property has been "transmuted" into marital property. *Id.* In this situation, the spouse seeking to rebut this presumption must demonstrate through clear and convincing evidence that he did not intend the property to be a gift to his spouse. *Id.* at 275–76. While the evidence shows Husband transferred the Residence into his Trust, the trial court found Husband subsequently gifted the Residence to the marriage. The Residence acquired the status of marital property once the quit claim deeds were recorded adding Wife as an owner of the Residence. The record before us supports the trial court's finding that Husband gifted the Residence to the marriage because Husband was both the Grantor and the Trustee of the Trust, and thus possessed the rights granted to him both by law and the terms of the Trust instrument which allow him significant control of the Trust and the Trust property.

As Trustee, the Trust granted Husband "the full power and authority to do any and all things necessary or proper to manage and control the property of the Trust Estate and every part and share thereof," including "[t]o sell ..., convert, reconvert, convey, assign, transfer, exchange or otherwise dispose of any property held by the Trustee in Trust hereunder." The Trust also granted Husband, as Trustee, the power to

> freely act under all or any of the powers by this Agreement [given] to the Trustee in all matters concerning the trust herein created, after forming a judgment based up on all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested therein, ..., and notwithstanding that the Trustee may also be acting individually or as trustee or other trusts.

As Grantor, the Trust granted Husband the power to "at any time during the Grantor's lifetime revoke [the] Trust in its entirety thereby terminating the Trust and

receive as the Grantor's own and individual property all of the assets, both principal and income, then in the hands of the Trustee hereunder, and the Grantor's sole receipt therefor shall be a full and complete discharge of the Trustee." The Trust also allows for the Grantor to "at any time or from time to time by written request, delivered to the Trustee, withdraw all or such part of the principal of the Trust Estate as the Grantor may designate and upon receipt of such request, the Trustee shall transfer and deliver to the Grantor or to the Grantor's order, free of Trust, such portion or portions of the principal of the Trust Estate as Grantor may request."

Reviewing the record on appeal, sufficient evidence exists that Husband intended to transfer ownership of the Residence to Wife and himself, even before the parties were married. Such transfer was clearly within the broad powers reposed in Husband as Trustee and Grantor. Husband's own pleadings filed with the trial court reflect his intention to transfer the Residence to joint ownership with Wife, and evidences Husband's understanding that the transfer of ownership took place. In light of the full record before us, we conclude that the trial court's finding that the Residence was a gift to the marriage and hence, marital property, is supported by substantial evidence.

### B. Remaining Trust Property

In his third point, Husband alleges the trial court erred in dividing the Trust assets because the trial court lacked authority to do so. However, apart from the Residence, discussed *supra,* the remainder of the Trust property was awarded to Husband. As such, Husband, as both Trustee and Grantor of the Trust has suffered no prejudice from the trial court's purported error.

The record confirms that the trial court's finding was supported by substantial evidence, was not against the weight of the evidence, and that the trial court did not erroneously declare or apply the law. Husband's second and third points are denied.

### Point IV—Maintenance Award to Wife

In his fourth point, Husband argues that the trial court abused its discretion in awarding Wife maintenance because 1) the trial court did not find that Wife lacked sufficient property to provide for her reasonable needs while being unable to support herself, and 2) the length of the marriage was short, Wife was awarded substantial property, Wife is able to work, Husband is unable to work as a result of a permanent disability, and Husband's net income is insufficient to justify an order of maintenance. We disagree and find the trial court acted within its discretion in making the maintenance award.

### Standard of Review

It is within a trial court's discretion to award maintenance. *Nichols v. Nichols,* 14 S.W.3d 630, 635 (Mo.App. E.D. 2000). We review a trial court's determination of whether to award maintenance for an abuse of discretion. *Id.* at 635–36. This Court reviews the evidence in a light favorable to the divorce decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence presented could support a different conclusion. *Woodard v. Woodard,* 201 S.W.3d 557, 561 (Mo.App. E.D.2006).

### Analysis

Section 452.335, RSMo 2000,[4] sets forth the findings a trial court must make in awarding maintenance in a dissolution of

---

**4.** All further statutory references are to RSMo 2000, unless otherwise indicated.

marriage proceeding. First, the trial court must find that the spouse seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs." Section 452.335.1(1). The trial court must then find that the spouse seeking maintenance is unable to support himself through appropriate employment or should not be required to be employed under the circumstances. Section 452.335.1(2). After a trial court determines a spouse is entitled to maintenance, it must consider all relevant factors, including nine statutorily enumerated factors in determining the amount of maintenance. Section 452.335.2. Husband argues that the evidence fails to support an award of maintenance to Wife. Specifically, Husband asserts that the trial court erred in awarding unlimited duration maintenance, and erred in awarding Wife maintenance in the amount of $1000 a month.

We agree with Husband that the duration of the marriage was relatively short, and that the evidence supports the trial court's finding that Wife is capable of working and becoming self-sufficient. However, as in all cases, we are limited by the applicable standard of review. As is well established in Missouri, a trial court has broad discretion in determining whether to award maintenance. *Garrison v. Garrison*, 255 S.W.3d 37, 40 (Mo.App. W.D. 2008). A trial court abuses this discretion when its ruling is clearly against the logic of the circumstances before the trial court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration. *Alberty v. Alberty*, 260 S.W.3d 856, 860 (Mo.App. W.D.2008). After reviewing the record, we cannot conclude the trial court abused its discretion in awarding Wife $1000 per month in maintenance. The trial court made the statutorily required findings that Wife lacked sufficient property to provide for her reasonable needs and is unable to currently support herself. After making these findings, the trial court found Wife was entitled to maintenance. The record indicates that the trial court then considered various relevant factors when it concluded, within its discretion, that Wife was entitled to $1000 per month in maintenance.

The record before us supports the trial court's finding that Wife left her employment as a cosmetologist to assist Husband after his stroke, and that at the time of the trial Wife remained unemployed. Wife testified that she suffered from arthritis and depression, although the trial court found there was no medical evidence that either of those conditions prevented Wife from obtaining employment. Based upon this evidence, the trial court found Wife was capable of working and becoming self sufficient, but further found Wife was unemployed at the time of the Judgment. As such, the trial court determined some maintenance was required to meet some of Wife's "reasonable needs," which the trial court found to be $3500 per month. The trial court exercised its discretion in awarding Wife only a portion of those "reasonable needs" in maintenance. In considering Husband's income, the trial court found Husband had sufficient income to meet his own "reasonable needs."

The trial court also noted the parties' short marriage, finding that while the division of property must be just, it need not necessarily be equal. The court examined the financial resources of the parties, noting that Husband reported income of approximately $60,000 on tax returns in 2006, while Wife had no income that year. Furthermore, even though the award of maintenance was for an unlimited duration, the trial court made the maintenance award subject to modification, such that should the parties' situations substantially change,

either party could petition to have the award modified.

The trial court's findings are based reasonably upon evidence in the record. The fact that we or any other trial court may reach a different conclusion after considering the same evidence does not mandate a finding that the trial court abused its discretion. To the contrary, we will defer to the trial court even if the evidence could support a different conclusion. *Woodard*, 201 S.W.3d. at 561.

In reviewing the record we find the trial court's findings are reasonably supported by the evidence, and that it did not abuse its discretion in awarding Wife maintenance. Husband's fourth point is denied.

### Point V—Legal Description of the Residence

In his fifth point, Husband asserts that the trial court plainly erred in awarding Wife the Residence without including a legal description of the Residence in the Judgment. We agree.

In its Judgment, the trial court awarded "[t]he home, known and numbered as 2540 Wallford Walk" to Wife and ordered Husband to "execute any and all documents necessary to transfer title to the property." Nowhere in the Judgment does the trial court include a legal description of the Residence. The Judgment merely refers to the property as "the marital residence."

However, we note that Husband does not point this Court to any place in the record where he provided the trial court with a legal description of the Residence. Nor does Husband refer to any place in the record where he made a request for a legal description. While typically we will not find error when the trial court fails to take action that was never requested, "a dissolution decree must contain a complete legal description of any real estate awarded in the decree." *In re Marriage of Tanner*, 245 S.W.3d 922, 923 (Mo.App. E.D.2008); *see also Hughes v. Hughes*, 247 S.W.3d 59, 62 (Mo.App. W.D.2008). "A full legal description is required in order to ensure that the filing of the decree with the recorder of deeds is effective in dispelling future questions about the title to that land." *Id.*

While this error was unpreserved, this point merits plain error relief because the omission in the Judgment will impact the chain of title to the property. *Id.* As such, we reverse the Judgment with respect to the omission and remand the cause to the trial court with directions for the trial court to enter an amended judgment that contains the legal description of the Residence. Husband's fifth point on appeal is granted.

### Conclusion

The Judgment of the trial court is affirmed in part and reversed and remanded in part. We reverse the Judgment with respect to the omission and remand the cause to the trial court with directions to the trial court to enter an amended judgment that contains the legal description of the Residence. We affirm the remainder of the Judgment.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.